STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Dr. Lisa Jeannine Schneider a/k/a Lisa Jeannine Nicotra,<br><br>      Plaintiff,<br><br>v.<br><br>Consulting Radiologists Ltd., a Minnesota corporation; Dr. Norman Arslanlar; Dr. Christopher Tillotson; Allina Health System, a Minnesota non-profit corporation; Dr. Dawn Johnson; and Dr. Casandra Anderson,<br><br>      Defendants. | CASE TYPE: _____<br><br>COURT FILE NO.: _____<br><br>**SUMMONS** |

**THIS SUMMONS IS DIRECTED TO DEFENDANTS.**

1.    **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this Lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2.    **YOU MUST REPLY WITHIN TWENTY (20) DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within twenty (20) days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

> Sarah E. Crippen
> Helen Sullivan-Looney
> Best & Flanagan LLP
> 60 South Sixth Street, Suite 2700
> Minneapolis, MN 55402
> (T) (612) 339-7121
> (F) (612) 339-5897

3.    **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within twenty (20) days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiffs everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.    **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.    **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint event if you expect to use alternative means of resolving this dispute.

Dated: 04/9/2019                              **BEST & FLANAGAN LLP**

Sarah E. Crippen (#223074)
Helen Sullivan-Looney (#400348)
60 South Sixth Street, Suite 2700
Minneapolis, MN 55402
(T) (612) 339-7121
(F) (612) 339-5897
scrippen@bestlaw.com
hsullivanlooney@bestlaw.com

ATTORNEYS FOR PLAINTIFF LISA
NICOTRA SCHNEIDER

2

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

---

Dr. Lisa Jeannine Schneider a/k/a Lisa
Jeannine Nicotra,

      Plaintiff,

v.

Consulting Radiologists Ltd., a Minnesota
corporation; Dr. Norman Arslanlar; Dr.
Christopher Tillotson; Allina Health System, a
Minnesota non-profit corporation; Dr. Dawn
Johnson; and Dr. Casandra Anderson,

      Defendants.

Court File No. _____

**COMPLAINT**

---

For her Complaint against Defendants Consulting Radiologists, Ltd. ("CRL"), Dr. Norman Arslanlar ("Arslanlar"), Dr. Christopher Tillotson ("Tillotson"), Allina Health System ("Allina"), Dr. Dawn Johnson ("Johnson"), and Dr. Casandra Anderson ("Anderson") (with Arslanlar, Tillotson, Johnson and Anderson referred to collectively as the "Individual Defendants"), Dr. Lisa Nicotra Schneider states and alleges as follows:

## INTRODUCTION

Plaintiff has been associated with Defendant CRL since early 2000. She is a board certified radiologist with a stellar academic record and employment and practice history. At CRL, she has been treated as both a shareholder and an employee, and despite serving on CRL's board, had little or no input into determining her compensation and had only limited access to information about her compensation and other terms and conditions of her employment and shareholder status.

In 2013, Plaintiff was appointed the Medical Director of the Breast Center at Allina, and began interacting with Defendants Johnson and Anderson. Johnson and Anderson, apparently angry with Plaintiff because Plaintiff raised performance concerns about another physician whom Johnson and Anderson sought to protect, then began a concerted campaign to damage Plaintiff's reputation in the Allina community and the Twin Cities medical community. Their attacks on Plaintiff included directly defamatory remarks about her abilities as a physician, and ultimately a systematic effort to have her removed as Medical Director of the Breast Center. CRL's management, including Arslanlar and Tillotson, failed to defend Plaintiff, failed to correct the deliberately false statements Anderson and Johnson made about Plaintiff, and ultimately succumbed to pressure by Allina to remove Plaintiff from her position as Medical Director, thereby defaming Plaintiff by implication suggesting that the defamatory statements made by Anderson and Johnson were true. Months after her removal as Medical Director, Plaintiff sought to meet with Anderson and Johnson to repair her relationships with them, but her efforts were met with hostility, additional defamatory behavior by Anderson, Johnson and O'Hare, and capitulation by CRL to Allina and its physicians' false and defamatory portrayal of Plaintiff's skills.

CRL, under the direction of Arslanlar and Tillotson, imposed unjustified and improper limitations on Plaintiff's practice, prohibiting her from performing mammography services, despite her unblemished and stellar record as a radiologist in that field. Ultimately, Defendants' unjustified and egregious defamatory statements and conduct toward Plaintiff forced Plaintiff to take a leave of absence in January 2018, approved by CRL as a leave under the federal Family and Medical Leave Act. Upon her return from leave in July 2018, however, Defendants continued their collective defamation of Plaintiff and sought to force her to voluntarily surrender

2

her mammography privileges. Defendants' concerted and public effort to limit Plaintiff's privileges, when Plaintiff had no performance deficiencies to justify that limitation, caused significant damage to her reputation as a radiologist and constituted defamation *per se*. Ultimately, Plaintiff decided to resign her position with CRL and her resignation was effective January 1, 2019.

Plaintiff has made requests for information about her employment and information to which she was entitled as a shareholder of CRL, which have gone largely ignored by CRL despite statutory obligations to provide Plaintiff with information. CRL has refused to provide complete information about Plaintiff's compensation, which Plaintiff believes was less than the compensation paid to other shareholders of CRL after she returned from her FMLA leave. CRL has also refused to provide Plaintiff with separation benefits that were made available to other departing physicians from CRL.

By this Complaint, Plaintiff seeks damages against Defendants for the deliberate and significant harm they have done to her reputation as a physician, to obtain an accounting of her compensation as compared to other shareholders of CRL, and to recover for CRL's discriminatory actions against Plaintiff.

## PARTIES AND JURISDICTION

1.      Plaintiff Lisa Jeannine Schneider is a Minnesota licensed medical doctor and a resident of the state of Minnesota.

2.      Defendant CRL is a closely held, non-public Minnesota corporation, organized under Minnesota Statutes Chapter 302A, and a private radiology practice. CRL is the exclusive provider of radiology services to Defendant Allina.

3

3.      Dr. Norman Arslanlar is a Minnesota licensed medical doctor and the Chief Executive Officer of Defendant CRL.

4.      Dr. Christopher Tillotson is a Minnesota licensed medical doctor and the President of the Board of Defendant CRL.

5.      Defendant Allina is a Minnesota non-profit corporation which operates multiple hospitals and other medical facilities, including in the greater Twin Cities area.

6.      Dr. Dawn Johnson is a Minnesota licensed medical doctor, an employee of Allina, and a resident of the state of Minnesota.

7.      Dr. Casandra Anderson is a Minnesota licensed medical doctor, an employee of Allina, and a resident of the state of Minnesota.

8.      This Court has jurisdiction over this matter, inasmuch as the cause of action arose in Hennepin County.

## FACTUAL BACKGROUND

9.      Defendant CRL hired Plaintiff as a radiologist under an Employment Agreement dated January 18, 2000.

10.     Plaintiff became a full-time CRL shareholder in July of 2001.  Throughout her affiliation with CRL, however, despite being a shareholder, Plaintiff understood that she remained subject to her Employment Agreement and that CRL viewed her as an employee for some purposes, including as defined by the Family and Medical Leave Act.

11.     From 2003 to January of 2018, Plaintiff was a 0.878 full-time equivalent shareholder of CRL.  On information and belief, Plaintiff was paid during that time in a manner that was substantially the same as other shareholders in the practice, except that she received 0.878 of full-time shareholder compensation in light of her less than full-time status.  As a

4

shareholder, until her FMLA leave in 2018, Plaintiff was entitled to shareholder distributions, over and above her base shareholder pay.

12.     During all times relevant to this Complaint, Plaintiff was an employee of CRL for purposes of the Family and Medical Leave Act, the Minnesota Whistleblower Act, and other applicable anti-discrimination statutes.

13.     During the times Plaintiff was a shareholder of CRL, she had all the rights of a shareholder under Minnesota Statutes Chapter 302A.

14.     Plaintiff's fellow shareholders in CRL, including Arslanlar and Tillotson as CEO and President, respectively, owed her the fiduciary duties applicable to shareholders in a closely held corporation.  Those duties included the duty to refrain from acting in a manner unfairly prejudicial toward Plaintiff and the duty to act in an honest, fair, and reasonable manner in the operation of the corporation and Plaintiff's reasonable expectations, as those expectations developed during the course of Plaintiff's relationship with CRL.

15.     Plaintiff has at all times been a high performing radiologist with CRL, receiving stellar reviews before she became a shareholder and being elected in 2013 to serve on the CRL Board and as Medical Director of Allina's Piper Breast Center.  In a practice where very few women were in leadership positions, Plaintiff was an important part of CRL's radiology and, in particular, its mammography and breast health practice.

16.     Between 2014 and 2016, Allina's Breast Center had an underperforming surgeon, and Defendant Johnson and Dr. Tami Lillemoe (among others) expressed concerns to Plaintiff regarding that Allina surgeon's work. Plaintiff and Defendant Johnson went together to bring their concerns to Dr. Dennis O'Hare, who was Vice President of Medical Administration for

Allina, in February of 2015. On information and belief, the concerns Plaintiff and Defendant

Johnson communicated to O'Hare were sent to committees for evaluation and investigation.

17.     In or about March of 2015, the Allina surgeon about whom Plaintiff and

Defendant Johnson had raised concerns had another incident of negligence. It was Plaintiff's

understanding that Allina arranged for outside review of the surgeon's work and that the surgeon

was to be provided with retraining. But by the fall of 2015, nothing had been done to

meaningfully address that surgeon's deficiencies, and Plaintiff and Defendant Johnson sent a

letter to O'Hare on October 29, 2015, following up on their concerns.

18.     O'Hare formed a committee to address the concerns about the Breast Center

surgeon in early 2016, but ultimately that committee took no action and the surgeon decided to

leave. At that time, Plaintiff expressed concern to O'Hare that, given the environment at Allina

and in the broader medical community, she would be viewed as a whistleblower and there might

be individuals who would want to sully her reputation in retaliation for her being so vocal about

an underperforming surgeon. O'Hare responded to Plaintiff at the time that he did not think a

campaign against her would be successful because, in his words, "If there is one person I've

never heard anything bad about, it's Lisa Schneider."

19.     After the Allina surgeon's departure, tension began to develop between Plaintiff,

on the one hand, and Defendants Johnson and Anderson, on the other. Plaintiff had a

conversation with Defendant Johnson in 2017 about Johnson's significant negativity in her

practice and interactions with others, and also raised concerns about the Medical Director at the

West Health facility, who was a CRL physician. Plaintiff expressed concern to Defendant

Johnson that the West Health Medical Director was very slow in reading scans and that his slow

pace was resulting in other physicians having to pick up significant additional workload.

6

20.    It was Plaintiff's perception that Defendants Johnson and Anderson liked the Medical Director at West Health, in part because he would comply with any request that they made and did not cause trouble for them.

21.    Eventually, Plaintiff suggested that a different physician be appointed as the Medical Director at West Health.

22.    Defendants Johnson and Anderson reacted extremely negatively to Plaintiff's suggestion that there be a change in the Medical Director at West Health. They showed significant hostility toward Plaintiff and refused to come to meetings with her after she began raising concerns. Eventually, Defendant Arslanlar of CRL became involved, ostensibly to try to resolve the hostility that Defendants Johnson and Anderson were showing toward Plaintiff.

23.    Defendant Arslanlar met with Defendants Johnson and Anderson in February 2017. While complaining that he had to talk to Defendants Johnson and Anderson (whom he referred to as "these gals"), Dr. Arslanlar told Plaintiff that they were "very opinionated" and "they hate you." Dr. Arslanlar confirmed that neither Johnson nor Anderson could make any legitimate complaints about Plaintiff's work at the Breast Center, commenting "they've got nothing on you."

24.    In March of 2017, Defendant Arslanlar told Plaintiff that Defendant Anderson had called all of the CRL board members and asked them to take action to terminate Plaintiff from CRL. Defendant Arslanlar said words to the effect that Defendants Johnson and Anderson "have it out for you" and that they had been receiving information from a CRL-employed physician in Plaintiff's section at CRL, who had loyalties to the West Health Medical Director about whom Plaintiff had expressed concern. CRL Board members also confirmed to Plaintiff that they had

7

received calls from Defendant Anderson during which Defendant Anderson urged them to terminate Plaintiff's employment with CRL.

25.     On information and belief, Defendants Johnson and Anderson were responsible for starting a petition at Allina calling for Plaintiff's ouster from CRL in the spring of 2017.

26.     Although CRL did not terminate Plaintiff's employment at the time, on information and belief, neither CRL nor Defendants Arslanlar or Tillotson, as CEO and President of CRL, took any action to negate or counter the defamatory comments made by Defendants Anderson and Johnson regarding Plaintiff.

27.     O'Hare met with Plaintiff and Defendants Johnson and Anderson in the summer of 2017, in an attempt to resolve the tension that apparently arose from Plaintiff's complaints about the West Health Medical Director.  Plaintiff asked Defendant Anderson during that meeting why she had called CRL board members as opposed to coming to her directly, and the meeting broke down shortly after that.  At that meeting, Defendants Johnson and Anderson made directly defamatory comments to and about Plaintiff, saying that she "listened but did not hear," that she was "the worst radiologist" and they "avoided her."

28.     Defendants Johnson and Anderson were both acting in the course and scope of their employment by Allina when they made defamatory remarks regarding Plaintiff.

29.     On information and belief, Defendants Johnson and Anderson, acting as employees of Allina, made similar defamatory remarks regarding Plaintiff's abilities as a radiologist to other CRL physicians, other Allina physicians, and Allina administration, as part of their effort to have her removed from CRL.

30.     At the time Defendants made defamatory remarks regarding Plaintiff's abilities as a radiologist, Plaintiff had an unblemished record as a radiologist.  She had no prior complaints

8

about her performance, nor had she been disciplined or otherwise criticized regarding her work as a physician.

31.     Defendants Anderson and Johnson repeated their defamatory statements regarding Plaintiff to members of CRL's management team, including Defendant Arslanlar.

32.     As a direct result of Defendants' defamatory statements about Plaintiff, Defendant Arslanlar informed Plaintiff via email on July 21, 2017, that she was being stripped of all leadership positions, including her position as Medical Director at the Piper Breast Center and her position on the Clinical Council at Allina.

33.     Although Plaintiff's removal from both the Medical Director and Clinical Council positions were characterized as resignations, both removals were plainly involuntarily, with CRL simply informing Plaintiff that she must step out of both positions of responsibility.   CRL required Plaintiff to submit statements of resignation from both positions and to inform her CRL colleagues that she was stepping down as the leader of the Breast Center.

34.     When Plaintiff asked why CRL was requiring her to step down from these positions, Defendant Arslanlar said that he would not discuss the matter further with her.

35.     This series of events caused significant concern for Plaintiff that she was being punished for having taken action to improve patient care at the Breast Center.  Defendants CRL, Arslanlar and Tillotson also perpetuated the defamatory statements made by Defendants Johnson and Anderson, by implication at least and possibly directly, in the process of forcing Plaintiff to resign her leadership positions relating to Allina.

36.     Plaintiff's removal from the Clinical Council raised particular concern.  CRL acted to remove her not for any legitimate, non-discriminatory reason, but rather in an effort to

9

keep her quiet and to maintain peace with Allina, without care for the damage her removal would cause to her reputation.

37.     In or about April of 2017, Defendant Tillotson was critical of Plaintiff in a CRL Board meeting because he disagreed with a position that Plaintiff took with the Allina Clinical Council. The Board meeting became acrimonious and Plaintiff left the meeting as soon as the business portion of the meeting was completed, and told Defendants Tillotson and Arslanlar that she was considering resigning from CRL. Defendant Arslanlar later apologized for the way the meeting went and encouraged Plaintiff not to resign, but accused Plaintiff of "becoming unhinged." This was consistent with other comments Defendant Arslanlar made to and about Plaintiff, describing her and her section as "crazy."

38.     In the July of 2017, Defendant Arslanlar informed Plaintiff that she was removed from the Clinical Council because she was "too outspoken" and "emotionally labile." Arslanlar told Plaintiff that Defendants Johnson and Anderson were calling him "all the time" to complain about Plaintiff and that people were asking "What is going on with her [Plaintiff]?"

39.     When Plaintiff talked with other members of the Clinical Council after her removal, they expressed surprise and disappointment that she had been removed.

40.     By late November of 2017, Plaintiff believed that the tension between her and Defendants Johnson and Anderson had cleared sufficiently that she could approach them to try to resolve whatever tension had existed between them. She approached both of them about getting together to talk. Defendant Anderson reacted to Dr. Schneider's invitation with abject hostility, eventually emailing Defendant Arslanlar and Dr. Brent Bullis to say that she was "not comfortable meeting alone" with Plaintiff. Again, Defendant Anderson's statements to others about Plaintiff were defamatory in both intent and effect, and had no basis in fact, and Defendant

10

Arslanlar individually, or on behalf of Defendant CRL, took no action to deny or counter Defendant Anderson's defamatory statements.

41.     At a CRL Board meeting on or about November 20, 2017, Defendants Arslanlar and Tillotson required Plaintiff to leave the meeting so that the Board could discuss the defamatory statements and hostile actions by Defendants Anderson and Johnson relating to Plaintiff.  Plaintiff has never received documents regarding any investigation done by CRL regarding those comments and actions, or documentation of the Board's discussion at the November meeting.

42.     When Plaintiff returned to the November 20, 2017, Board meeting after being asked to leave, Defendant Arslanlar called Plaintiff "vindictive" and informed her that she would be "disciplined."  Defendant Arslanlar gave Plaintiff a letter from a registered nurse that was more than a year old and suggested that letter was the basis for CRL's planned "discipline" of Plaintiff, but refused to provide any further details regarding supposed behavior that warranted discipline.

43.     On December 1, 2017, the CRL Board, led by Defendants Arslanlar and Tillotson, issued a directive to Plaintiff requiring that she have no further contact with Defendants Johnson and Anderson, that she have no contact with the Breast Center, and that she return to general radiology and not have any further involvement in mammography.

44.     Other than the directive issued on December 1, 2017, Plaintiff has received no documentation of any discipline by CRL and has never received any information indicating that CRL conducted any investigation of allegations against her or documenting any poor performance or misconduct on her part that would warrant discipline.  No such information was

included in the personnel file that CRL belatedly produced to Plaintiff, or in the limited

information CRL provided in response to Plaintiff's shareholder requests.

45.     Defendants CRL, Arslanlar and Tillotson conducted no investigation of any

allegations made by Allina or its individual physicians relating to Plaintiff and gave Plaintiff no

opportunity to respond to those allegations.  To the contrary, Defendant Arslanlar specifically

refused to inform Plaintiff of the statements that Defendants Johnson and Anderson had made

against her.

46.     CRL's December 1, 2017, directive to Plaintiff perpetuated and affirmed the

defamatory statements and conduct of Defendants Anderson and Johnson, both of whom acted

on behalf of their employer, Allina.

47.     Plaintiff's removal from the Medical Director position and the Clinical Council,

CRL's decision to shut her out of all mammography work, and the directive that she have no

contact whatsoever with two physicians at the Breast Center (Defendants Anderson and

Johnson), all had a devastating impact on Plaintiff. She was extremely worried about her

reputation as a radiologist – a reputation that she had earned over many years of work – and the

limitation of her practice.  The manner in which CRL handled the Allina issue took a significant

toll on Plaintiff's working relationships with her colleagues.

48.     In early 2018, Plaintiff's provider recommended that she take a leave of absence

from work.  CRL approved that as FMLA leave and Plaintiff was away from work entirely from

late January to late July of 2018.

49.     A former colleague of Plaintiff's commented to her that he heard that she was on

leave because she "called out quality issues at the Piper Breast Center."

50.     When Plaintiff returned from her FMLA leave, Defendant CRL informed Plaintiff that upon her return to part-time work, instead of simply adjusting her FTE as a shareholder, she would be paid as an employee under a "day rate" approach, rather than being paid as a shareholder. Despite Plaintiff's requests to CRL, CRL has not provided information sufficient to determine whether, as a result of using the day rate, Plaintiff was effectively paid less than she would have been at an adjusted FTE shareholder rate. On information and belief, through this arrangement, Plaintiff was deprived or some or all of the "variable pay" she would have been entitled to as a shareholder.

51.     Upon Plaintiff's return from FMLA leave, CRL also attempted to force Plaintiff to voluntarily surrender her staff privileges with Allina to perform mammography work. CRL provided Plaintiff with no information to support the practice's request that she so limit her practice. When Plaintiff insisted that she would not voluntarily give up her privileges for mammography, CRL continued to press, while also continuing to limit her work to general radiology.

52.     As a result of CRL's directives, and through no fault of Plaintiff's, she was kept out of mammography for more than a year.

53.     As described more fully below, Plaintiff made several document requests to CRL but received very little information in response to those requests. The information provided by Defendant CRL contains nothing that would support a disciplinary limitation on Plaintiff's privileges or practice scope.

54.     Dr. Dan O'Laughlin, a Minnesota licensed physician employed by Emergency Care Consultants and Acting Chief of Abbott Northwestern Hospital's medical staff, was supportive of Dr. Schneider with respect to CRL's attempt to limit her privileges. Dr.

O'Laughlin confirmed that Defendants, including CRL, Arslanlar and Tillotson, were seeking to

keep Plaintiff out of mammography altogether – this despite the fact that Plaintiff had nothing on

her record to indicate any credentialing concern in mammography or any other radiology area.

Plaintiff's conversations with Dr. O'Laughlin made clear that CRL, Allina and the Individual

Defendants were continuing to disparage Plaintiff's skills as a radiologist, with no legitimate

basis or reason.

55.    With her practice involuntarily limited to general radiology and no

mammography, and with CRL and Allina insisting that she voluntarily surrender her

mammography privileges, and in light of the improper treatment she had received from CRL

since she raised quality of care concerns at the Allina Breast Center, Plaintiff decided to resign

her position with CRL effective January 1, 2019.  Plaintiff gave her notice of resignation on

October 3, 2018.

56.    On October 5, 2018, Plaintiff, through her counsel, requested her personnel record

from CRL, information about her compensation at CRL, and documents to which she was

entitled as a shareholder under Minnesota Statutes section 302A.461.

57.    CRL ignored Plaintiff's requests until October 30, 2018, when CRL's counsel

reached out to Plaintiff's counsel by telephone and email to discuss Plaintiff narrowing her

requests.  After a telephone call between counsel, CRL produced what it represented to be

Plaintiff's personnel record, along with a set of documents partially responsive to Plaintiff's

shareholder requests, on November 14, 2018, almost six weeks after Plaintiff made her document

requests.

58.    In its November 14, 2018, communication, CRL did not produce any information

indicating that any investigation was done by CRL, Arslanlar, Tillotson regarding any allegations

or defamatory statements made by Defendants Allina, Johnson or Anderson, or any allegations relating to Plaintiff's ability to practice mammography.

59.    To date, CRL has not provided any further information responsive to Plaintiff's requests.

60.    Having been the subject of such significant, targeted discipline and negativity, Plaintiff expected to see some documentation of CRL's interactions with Allina over the past two years as they related to her practice, but CRL produced no such documents. In a telephone conversation regarding Plaintiff's document requests, CRL's counsel represented to Plaintiff's counsel that CRL had "vetted" the criticisms about Plaintiff voiced by Allina and the Individual Defendants before CRL took action in the summer of 2017 to force Plaintiff out of her leadership positions at the Breast Center and the Clinical Council. However, neither Plaintiff's personnel record nor any documents produced in response to her other requests made any reference to any investigation by CRL of the defamatory statements made by Defendant Allina through the Individual Defendants. Indeed, the documents provided by CRL contain no reference whatsoever to any concerns about Plaintiff's skills, experience or practice history with CRL and Allina.

61.    On December 31, 2018, Plaintiff made a request through counsel for an accounting of her compensation, and compensation of other shareholders, for 2017 and 2018, information about her capital account as a shareholder of CRL, and information regarding her malpractice tail coverage and her entitlement to trailing earnings payments, among other things.

62.    CRL's counsel responded to the December 31, 2018, for the first time by leaving a voicemail for Plaintiff's counsel on February 6, 2019. Counsel exchanged messages and eventually spoke by telephone on February 14, 2019. CRL's counsel has never provided a

written response, or documents, responsive to Plaintiff's counsel's requests of December 31,

2018, despite the fact that Plaintiff's counsel notified CRL's counsel on March 25, March 26,

March 29 and April 4, 2019, that it had received no response from CRL's counsel.

## COUNT I
### DEFAMATION (ALL DEFENDANTS)

63.     Plaintiff restates the prior allegations of this Complaint.

64.     Defendants made directly and implicitly defamatory statements, as set forth

above, that Plaintiff was the "worst radiologist," that she was difficult to work with, that she

posed a threat to other physicians, that she was "emotionally labile" and "crazy", that Plaintiff

was not qualified or capable of performing mammography, that Plaintiff was not qualified or

capable to serve as Medical Director of the Piper Breast Center, and that Plaintiff was not

qualified or capable of serving on Allina's Clinical Council.

65.     Defendants CRL, Arslanlar, Tillotson and Allina, by their actions in removing

Plaintiff from positions of leadership, implied that Plaintiff lacked professional skills or had

personal deficiencies that prevented her from continuing to serve in those roles.

66.     Defendants' direct and implied statements regarding Plaintiff were knowingly

false, and/or were made with reckless disregard for their truth, and were therefore defamatory.

67.     Defendants' defamatory statements and actions toward Plaintiff related to her

profession and employment, and therefore constitute defamation *per se.*

68.     As a result of Defendants' defamation, Plaintiff has suffered damages, including

damage to her reputation, lost income, lost professional opportunity, emotional distress and

attorneys' fees.

## COUNT II
## INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS OPPORTUNITIES (ALL DEFENDANTS)

69.     Plaintiff restates the prior allegations of this Complaint.

70.     As a qualified radiologist with excellent credentials and long experience in the Minnesota medical community, Plaintiff had a reasonable expectation of existing and future economic advantage and benefit as a radiologist in the Twin Cities medical community.

71.     Defendants had knowledge of Plaintiff's existing and prospective opportunities.

72.     Defendants wrongfully and without justification interfered with Plaintiff's reasonable expectation of economic advantage or benefit.

73.     In the absence of Defendants' wrongful acts, it was reasonably probable that Plaintiff would have realized continued economic advantage and benefit as a radiologist in the Twin Cities medical community.

74.     As a result of Defendants' wrongful acts, Plaintiff has suffered damage, including but not limited to damage to her reputation, lost income, lost professional opportunity, emotional distress and attorneys' fees.

## COUNT III
## MINN. STAT. §§ 181.961, 181.963: FAILURE TO PRODUCE PERSONNEL RECORD; PROHIBITED USE OF OMITTED INFORMATION (DEFENDANT CRL)

75.     Plaintiff restates the prior allegations of this Complaint.

76.     Minnesota Statutes section 181.961 required CRL to timely produce Plaintiff's personnel record.

77.     CRL failed to produce Plaintiff's personnel record in the time required by Minnesota statute.

17

78.     As a result of CRL's failure to timely produce Plaintiff's personnel record,

Plaintiff has suffered damages, including attorneys' fees and costs.

79.     Minnesota Statutes section 181.963, prohibits CRL from using any information

omitted from Plaintiff's personnel record in this or any other action.  To the extent CRL attempts

to introduce information in this action that should have been included in her personnel record,

Plaintiff is entitled to an order enjoining such use.

**COUNT IV**
**MINN. STAT. § 302A.461: FAILURE TO PRODUCE SHAREHOLDER RECORDS**
**(DEFENDANT CRL)**

80.     Plaintiff restates the prior allegations of this Complaint.

81.     Plaintiff is entitled to access to documents relating to CRL pursuant to Minnesota

Statutes section 302A.461.

82.     Plaintiff made a proper request for records under Minn. Stat. § 302A.461 on or

about October 5, 2018, and has since reiterated that request.  Plaintiff's requests for documents

were made for a proper purpose.

83.     Defendant CRL failed to respond within ten days to Plaintiff's shareholder

records request, and to date (more than six months after the initial request) has still failed to

provide a complete set of documents responsive to Plaintiff's request.

84.     Plaintiff is entitled to an order requiring Defendant CRL to immediately produce

all corporate documents responsive to Plaintiff's request, as well as an order reimbursing her for

her expenses incurred with respect to her requests and this enforcement action, including her

attorneys' fees pursuant to Minn. Stat. § 302A.467.

## COUNT V: ACCOUNTING (DEFENDANT CRL)

85.     Plaintiff restates the prior allegations of this Complaint.

86.     Plaintiff has made multiple requests to CRL, both directly and through counsel, for information regarding her compensation in calendar years 2017 and 2018 and information that would allow her to determine whether she was paid properly as an employee shareholder of CRL during those periods.

87.     Although Plaintiff has received a return of her initial capital investment in CRL, on information and belief CRL had one or more capital calls that required Plaintiff to make an additional capital investment in CRL, in the form of withholdings from shareholder distributions, and CRL has not returned those additional capital investments to Plaintiff.

88.     Despite Plaintiff's requests, Defendant CRL has refused to provide Plaintiff with an accounting of her compensation paid in calendar years 2017 and 2018, information regarding the compensation of other similarly-situated shareholders for those periods, or information that would allow Plaintiff to determine whether she has received a complete return of her capital investment in CRL.

89.     Plaintiff is entitled to a full accounting of her compensation and capital investments, and to payment of any amounts owing to her as demonstrated by such accounting.

## COUNT VI: BREACH OF FIDUCIARY DUTY
### (DEFENDANTS ARSLANLAR AND TILLOTSON)

90.     Plaintiff restates the prior allegations of the Complaint.

91.     Defendants Arslanlar and Tillotson, as shareholders in control of CRL, by their actions described in this Complaint, have acted in a manner unfairly prejudicial toward Plaintiff as an employee of CRL.

92.     Defendants Arslanlar and Tillotson, by their actions described in this Complaint, breached their duty to treat Plaintiff in an honest, fair, and reasonable manner in their operation of the corporation.

93.     Defendants Arslanlar and Tillotson, by their actions described in this Complaint, have breached their duty to act according to Plaintiff's reasonable expectations as a shareholder.

94.     As a result of Defendants Arslanlar and Tillotson's actions, Plaintiff has suffered damages and has been deprived of information to which she was entitled as a shareholder employee of CRL.

95.     Plaintiff is entitled to an award of her damages, including her attorneys' fees, and to equitable relief, including an order requiring Defendants Arslanlar and Tillotson to provide an accounting of Plaintiff's compensation and the compensation of other shareholders, and to produce documents to which Plaintiff is entitled as a former shareholder of CRL.

## COUNT VII: VIOLATION OF MINNESOTA WHISTLEBLOWER ACT
## (DEFENDANTS CRL AND ALLINA)

96.     Plaintiff restates the prior allegations of the Complaint.

97.     As Medical Director of Allina's Piper Breast Center, Plaintiff stated concerns regarding physician performance, including the performance of the Medical Director of the West Health facility, which in Plaintiff's judgment had a direct, negative impact on patient care at the Breast Center.

98.     Plaintiff's reports regarding the West Health Medical Director and other matters relating to patient care at the Breast Center were protected activity under Minnesota Statutes section 181.932, subd. 1.

99.     The actions by Defendants CRL and Allina to remove Plaintiff from her position as Medical Director of the Breast Center, to remove her from the Clinical Council, and to place

unwarranted restrictions on her staff privileges, constitute unlawful retaliation for Plaintiff's

protected activity under Minnesota Statutes section 181.932, subd. 1.

      100.    As a result of Defendants' unlawful actions, Plaintiff has suffered damages,

including lost income, damage to her reputation, emotional distress, attorneys' fees and costs.

Plaintiff is entitled to recover these damages and other equitable relief under Minnesota Statutes

section 181.935.

### COUNT VIII: RETALIATION FOR THE EXERCISE OF FMLA RIGHTS
### (DEFENDANT CRL)

      101.    Plaintiff restates the previous allegations of the Complaint.

      102.    Plaintiff was on an approved leave of absence under the Family and Medical

Leave Act between January and July 2018.

      103.    Plaintiff was an eligible employee for purposes of the FMLA, 29 U.S.C. § 2611.

      104.    Defendant CRL is an employer subject to the FMLA, 29 U.S.C. §§ 2611(4), 2617.

      105.    By approving Plaintiff's absence as FMLA leave, CRL acknowledged Plaintiff's

status as an employee within the meaning of the Family and Medical Leave Act.

      106.    CRL approved Plaintiff's return from FMLA leave on a part-time basis.

      107.    Plaintiff's leave of absence constituted protected activity under the FMLA.

      108.    Upon Plaintiff's return from FMLA leave, Defendant CRL changed Plaintiff's

compensation approach to pay her as an employee, as opposed to as a shareholder; failed to pay

Plaintiff for days for which she was entitled to be paid; limited Plaintiff's practice to general

radiology and restricted her from performing mammography; pressured Plaintiff to voluntarily

surrender her mammography privileges; failed to provide Plaintiff to information to which she

was entitled as an employee and shareholder; defamed Plaintiff; and, working with the other

Defendants, sought to damage Plaintiff's reputation in the Twin Cities medical community and limit Plaintiff's practice, earning potential and leadership opportunities.

109.    Defendant CRL's actions with respect to Plaintiff following her protected FMLA leave constitute adverse employment actions.

110.    As a result of Defendant CRL's adverse employment actions, Plaintiff has suffered damages including lost income, lost opportunity, damage to her reputation, emotional distress, attorneys' fees and expenses.

WHEREFORE, Plaintiff requests an Order:

1.    Entering judgment against Defendants and in favor of Plaintiff;

2.    Awarding Plaintiff damages;

3.    Granting Plaintiff an accounting and other equitable relief; and

4.    Granting Plaintiff her attorneys' fees and expenses; and

5.    Granting such other and further relief as the Court may deem just and equitable.


BEST & FLANAGAN LLP

Date: April 9, 2019

Sarah E. Crippen (#223074)
Helen Sullivan-Looney (#400348)
60 South Sixth Street, Suite 2700
Minneapolis, MN 55402
Telephone (612) 339-7121
scrippen@bestlaw.com

ATTORNEYS FOR PLAINTIFF LISA NICOTRA
SCHNEIDER

**Acknowledgment**

I hereby acknowledge that, pursuant to Minn. Stat. § 549.211, subd. 3, sanctions may be imposed

by this Court if it determines that Minn. Stat. § 549.211, subd. 2, has been violated.


Date: April 9, 2019

Sarah E. Crippen